STATE OF MAINE

*vs.*

RICHARD B. WOODS

Sagadahoc.    Opinion, July 25, 1958.

*George M. Carlton, Jr.,* for plaintiff.

*Harold J. Rubin,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WEBBER, J.   The respondent here was convicted of murder.   The evidence of homicide during an act of robbery which was offered by the State was conclusive as to guilt and no defense was offered or attempted.

During the trial the respondent moved for a mistrial. His motion was denied by the presiding justice and an exception to that ruling presents the only issue for determination here.

The facts which give rise to the motion are not in dispute. On the evening of the sixth day of trial the respondent's

attorney entered the hotel where the jury was quartered. He observed a woman whom he recognized as a member of the panel proceeding unaccompanied down the main stairway to a public water cooler where she stopped for a drink of water. On the same occasion he observed four members of the jury on the porch of the hotel in the company of an attending officer. On the following morning he addressed his motion to the presiding justice and informed him as to the observations made the previous evening. The learned justice then proceeded forthwith with the most commendable care and caution to examine into the methods which had been and were being employed to protect the jury from outside communication or influence. To this end he personally examined each of the jury officers and each member of the jury separately. The testimony of each juror and officer was given under oath and under such circumstances that no member of the jury heard the testimony of any other member or knew the purpose or nature of the examination until in his turn he was summoned into the presence of the court. Full opportunity was afforded counsel for both the State and the respondent to examine further the officers and jurors.

The presiding justice could properly conclude from the evidence thus adduced that the members of the jury, comprising both men and women, were quartered on the second and third floors of the hotel; that they were in the custody of two officers, a man and a woman, and were almost constantly in the company and under the surveillance of one or the other of these officers except when lodged in their bedrooms or when momentarily out of sight of both officers while traversing a short distance within the hotel from one group of jurors to another; that in no instance had there occurred any communication whatever with the public or any third party except as unavoidably caused by the necessity of ordering meals in the dining room and the like; that the member of the jury observed at the water cooler was,

with the permission of the attending officer, passing from her room to the porch to join the other officer and the group of jurors there assembled; that the time which elapsed while she was out of sight of both officers was very brief; that during that short interval she had no communication with anyone; and finally that the occupancy by a third party of one room on the third floor had resulted in contact with only one member of the jury who had passed the third party once in the corridor but without any communication. In the exercise of a sound discretion, the presiding justice took immediate steps to isolate the jury from further contact with the third party resident on the third floor, but declined to order a mistrial.

The ordering of a mistrial is within the sound discretion of the presiding justice and exceptions will lie only to a clear abuse of that discretion. *State* v. *Norton,* 151 Me. 178; *State* v. *Hamilton,* 149 Me. 218; *State* v. *Rheaume,* 131 Me. 260. "Mistrial is ordered only in those rare cases where the trial cannot proceed further with the expectation of a fair result." *State* v. *Libby,* 153 Me. 1, 5. Was there here a clear abuse of discretion?

Although there is a split of authority even among the so-called common law states as to whether or not in capital cases a jury may properly be permitted to separate during the trial and before the case is submitted to them for their deliberation, it has long been recognized that in Maine no such separation is permitted. In *State* v. *Howard,* 117 Me. 69, a case involving a charge of rape, the court said by way of dictum at page 72: "The procedure in such (capital) cases is not regulated by statute here as it is in some other States, but so far as we know it has been the universal practice in this State in capital cases * * * to keep the jury together until a verdict is rendered or a disagreement is accepted." This dictum correctly states the common law rule as it has been understood and interpreted in this jurisdic-

tion. It may be further noted that the accepted practice has been to place jurors in capital cases in the custody of attending court officers from the moment they are accepted and sworn. That was the procedure followed in the case at bar and it was obviously not intended by either the presiding justice or the officers in charge that any improper or prejudicial separation of the jury should take place during the progress of the trial.

In our view the decision here is controlled by our determination as to what constitutes an unauthorized "separation" which the law will notice. It is not every withdrawal of one or more jurors from their fellows that constitutes a "separation" in the legal sense. Logic and reason support the rule found in 53 Am. Jur. 635, Sec. 876: "The rule against separation of jurors without authorization by the court does not mean that they must not physically part from one another, or that they must all be kept within the narrow compass of the jury box. Not every separation of a juror from his fellows constitutes an unlawful separation, or is such a separation as the law will notice. The rule against separation does not go to the length of prohibiting necessary temporary separations, such as those occurring in emergencies, where precautions are taken against abuses." The cases dealing with this and related issues are assembled in three annotations found in 34 A. L. R. 1102, 79 A. L. R. 821, and 21 A. L. R. (2nd) 1088. The rules governing the supervision of a jury during the often protracted trials of capital cases must be realistic and practical while at the same time eliminating insofar as possible any reasonable opportunity for communication, outside influence and prejudice. Both the State and the respondent are entitled to a verdict which is the product of minds which are influenced only by the law and the evidence properly submitted to them during the trial and the jurors themselves are entitled to be protected from even the appearance of improper influence in order to be assured of public confidence in their verdicts.

We are satisfied that the presiding justice was entirely justified in concluding on the evidence here presented that this jury did not "separate" in any legal sense. No juror was shown to be more than momentarily out of the sight of at least one of the officers in attendance and then under circumstances that negative any reasonable likelihood of communication or influence. The single instance of contact with a third party in the hotel corridor under the circumstances disclosed held no greater risk of prejudice than would arise from contact with waitresses in the hotel dining room or common passage along the public streets. In the language above quoted, this was not such a separation "as the law will notice." The separation shown was merely technical and not real.

In view of the foregoing, we do not reach the issue as to whether prejudice will be conclusively presumed from an unlawful separation, or will be presumed until rebutted by the State, or whether prejudice must in all cases be affirmatively shown by the respondent. On this subject the authorities are not in accord as disclosed by the cited annotations *(supra)*. Suffice it to say that the presiding justice below with painstaking thoroughness demonstrated beyond any doubt not only the lack of reasonable opportunity for communication or influence in this case, but the complete absence of prejudice as well.

*Exceptions overruled.*